# REPORT OF EXAMINATION

## Rod Slappy-Sutton and Jean Sutton v Speedway, LLC

Prepared for

### FOX LAW, PC

Two Logan Square
100 North 18th Street
Suite 2030
Philadelphia, Pennsylvania  19103

Prepared by

### Keith A. Bergman, P.E.



171 Ruth Road
Unit B
Harleysville, PA 19438
215-256-4861
kbergman@BergmanEngineering.net

June 16, 2017



# ENGINEERING REPORT
# MADE FOR
# FOX LAW, PC
Two Logan Square
100 North 18th Street
Suite 2030
Philadelphia, Pennsylvania  19103

## Rod Slappy-Sutton and Jean Sutton v Speedway, LLC

### BACKGROUND

It was reported that at approximately 6:45 PM on January 19, 2016, Rod Sutton fell onto the parking lot from a sidewalk curb at the Speedway located at 258 South Easton Road in Glenside, Cheltenham Township, Montgomery County, Pennsylvania.

A review of Local Climatological Data for Philadelphia Wings Airport, Blue Bell, Montgomery County, Pennsylvania from Weather Underground for January 19, 2016 revealed the following information.  The temperatures ranged from 14 degrees to 26 degrees Fahrenheit, and no precipitation was recorded.  The end of civil twilight was recorded as 5:33 PM.

It was requested that the incident site be examined and the incident circumstances be reviewed to determine the nature and cause of this incident.

### SUBMITTED MATERIAL

1. Pleadings:
    a. Complaint.

2. Information Provided by Plaintiff:
    a. Answers to Defendants Interrogatories.

3. Information Provided by Defendant:
    a. Answers to Plaintiffs' Interrogatories.
    b. Email, Invoices and Work Orders, dates vary.



June 16, 2017                                                                                                             Page 2 of 15

4.      Statements:

        a.      Kate McCarthy, undated.

5.      Depositions with Exhibits:

        a.      Rod Slappy-Sutton, dated February 27, 2017.
        b.      Danielle Boyle, dated February 28, 2017.
        c.      Kate McCarthy, dated February 28, 2017.

6.      Other Information:

        a.      Photographs.
        b.      Local Climatological Data, from Philadelphia Wings Airport, Pennsylvania, dated January 19, 2016.
        c.      U.S. Naval Observatory Sun and Moon Data for January 19, 2016.
        d.      Speedway, LLC Accident/Incident Report, dated January 19, 2016.
        e.      Store Surveillance Video.

## SUBMITTED MATERIAL REVIEW

Plaintiff's Answers to Interrogatories

     Answer 20 stated, in part:

         At approximately 6:45 p.m., I went to the Speedway with my wife and son to purchase gas and food for my son. I paid for the purchase and exited the front door. After exiting the front door, I took a few steps on the front sidewalk when I suddenly fell forward into the surface of the parking area. When I fell, I thought I was stepping on the surface of the sidewalk/curb.

Statement of Kate McCarthy: A review of this statement revealed the following information:

- Kate McCarthy stated that she worked for Speedway, she looked up from her register when she heard a yell, she saw a man lying on his left side in front of the step outside of the entrance, she went outside, the man said he fell, and she offered to call an ambulance.

Deposition of Rod Slappy Sutton: A review of this deposition revealed the following information:

- Rod Sutton testified that at the time of the incident, he was wearing Nike high top sneakers, the weather was clear and cold, and it was dark outside but the lighting from the store and in the area was good [RS.14,101,113].



June 16, 2017                                                                                                Page 3 of 15

- Rod Sutton testified that it was the first time he was in the store as a Speedway store, but he had been in the store once or twice when it was a Hess store [RS.98,99].

- Rod Sutton testified that he did not recall having a problem stepping off the sidewalk when he exited the store during the times it was a Hess store [RS.105-107].

- Rod Sutton testified that at the time of the incident, he was walking out of the store back to his vehicle with his son [RS.99,113].

- Rod Sutton testified that when he walked into the store, he did not have any difficulty because the step up onto the sidewalk was clearly defined going in [RS.115,120].

- Rod Sutton testified that at the time of the incident, he was looking down and the sidewalk was not where he thought it was going to be, *"I remember taking a step and thinking that I was still on a solid plane and then my leg falling down unexpectedly. So I remember looking down and seeing a solid plane that looked different from the darker color of the surrounding parking lot. And I remember missing the step because I thought I was still on the walk because from the top it looked like I had more sidewalk than I had"* [RS.123,124].

- Rod Sutton testified that at the time of the incident, he thought he had more sidewalk than he had and thought he could continue to walk straight across at least another 2 feet [RS.124,128].

- Rod Sutton testified that at the time of the incident, he was looking down over the curb and his perception from the way it was colored seemed that the curb extended out more than it did but the drop happened sooner and he fell [RS.128,131].

- Rod Sutton testified that when he took the last step with his left foot before he fell, he was looking down and believed he still had a few more steps to go before he got to the curb [RS.136-138,144,145,150].

- Rod Sutton testified that usually when he stepped off other curbs, he could see a difference between the curb and the street by a striped line or it being painted yellow but he never saw a curb that was the same color as the drop [RS.147,148].

- Rod Sutton testified that the sidewalk and patch of concrete in front of it looked exactly the same color as if he was stepping on the same plane [RS.153].



June 16, 2017 Page 4 of 15

Deposition of Danielle Boyle:  A review of this deposition revealed the following information:

- Danielle Boyle testified that at the time of the incident, she was the manager of the subject Speedway store, and she was not at the store at the time of the incident [DB.6,9,22].

- Danielle Boyle testified that when Speedway took over the store from Hess, Crompco put in electric lines that ran *"along the front of the curb from the gas lines all the way over from the curb all the way around the curb to the dumpsters"* [DB.18,19].

- Danielle Boyle testified that when the incident occurred, Kate McCarthy, her coworker, called and stated a guest had fallen outside and was calling 911 [DB.25,26].

- Danielle Boyle testified that she took photographs of the incident area the next day and prepared an incident report, and asked Kate McCarthy to write a statement [DB.29-31].

- Danielle Boyle testified that someone from corporate asked her to take measurements of the curb after the incident [DB.35].

- Danielle Boyle testified that she viewed the video showing Rod Sutton's fall [DB.45].

- In reviewing photographs, Danielle Boyle testified that the strip shown at the curb was created by the work Crompco did; and before the work was done, the asphalt came all the way up to the curb [DB.48].

- Danielle Boyle testified that after the work was done by Crompco, she was not aware of anyone recommending the cement strip be made consistent with the color of the asphalt [DB.52].

- Danielle Boyle testified that she did not have personal knowledge of how the incident happened and she was not aware of any other falls occurring at the front of the store [DB.36,54].

- Danielle Boyle testified that she was not aware of any recommendations about painting the curb [DB.49].

Deposition of Kate McCarthy:  A review of this deposition revealed the following information:

- Kate McCarthy testified that she was a cashier at the subject Speedway store [KM.5,6].



June 16, 2017                                                                                                    Page 5 of 15

- Kate McCarthy testified that at the time of the incident, she was at the cash register and she heard a yell, she looked outside and saw Rod Sutton on the ground and she called 911, but she did not witness the incident [KM.8].

- Kate McCarthy testified that she called her coworker Danielle Boyle and told her about the incident and was asked to write down a statement which she did [KM.11-15].

- Kate McCarthy testified that she was not aware of anyone complaining about the incident curb or falling in the incident area [KM.17,19].

## EXAMINATION AND ANALYSIS

An examination of the curb at the front entrance/exit of the Speedway located at 258 South Easton Road in Glenside, Montgomery County, Pennsylvania was performed on March 1, 2016 at 7:30 PM which was after the end of civil twilight.  The purpose of this examination was to observe conditions, obtain measurements and take photographs.  For reference purposes, South Easton Road extended in a north-south direction with 258 South Easton Road located on the west side of the street.  For ease of reference and orientation, a Street Map and *"Birds Eye"* Aerial View are shown below:



June 16, 2017                                                                                                           Page 6 of 15



**<u>Street Map</u>**

**Reference:** https://binged.it/2qVXPTb



June 16, 2017                                                                                                          Page 7 of 15



*"Birds Eye"* **Aerial Map**

**Reference:** https://binged.it/2qVXPTb



June 16, 2017                                                                                                  Page 8 of 15

The front of the Speedway store included a concrete sidewalk area, as shown in the photographs below.

 

The sidewalk area included a curb which required patrons to step up onto the curb when entering the store and step down from the curb when leaving.

An enlarged view of the sidewalk and curb area revealed the 1 foot wide concrete area placed in front of and along the curb by Crompco in October 2015 (approximately 3 months prior to the incident), as shown in the photograph below.





June 16, 2017                                                                                             Page 9 of 15

The width of the sidewalk in front of the building measured 77-1/2 inches from the building wall to the back of curb, and approximately 83-1/2 inches to the face of curb.  The color of the 1-foot strip in front of the curb and sidewalk was nearly identical to the top of curb and sidewalk abutting the store.

The height of the curb step measured approximately 7 inches.

As shown in the photograph above, an area of concrete in front of the curb had been installed and measured about 1 foot out from the face of curb.

The designated handicap accessible parking stall was on the north side of the store.

The perimeter curb was painted white along the north end of the parking lot, as shown in the photograph below.



### **BASIS OF OPINIONS**

Description of Incident

>   At approximately 6:45 PM on January 19, 2016, Rod Sutton fell onto the parking lot from a sidewalk curb at the Speedway located at 258 South Easton Road in Glenside, Cheltenham Township, Montgomery County, Pennsylvania.  Rod Sutton testified that at the time of the incident, he was looking down and the sidewalk was not where he thought it was going to be, *"I remember taking a step and thinking that I was still on a solid plane and then my leg falling down unexpectedly.  So I remember looking down and seeing a solid plane that looked different from the darker color of the surrounding parking lot.  And I remember missing the step because I thought I was still on the walk because from the top it looked like I had more sidewalk than I had"* [RS.123,124].



June 16, 2017																																			Page 10 of 15

Rod Sutton testified that at the time of the incident, he was looking down over the curb and his perception from the way it was colored seemed that the curb extended out more than it did but the drop happened sooner and he fell [RS.128,131].  Rod Sutton testified that when he took the last step with his left foot before he fell, he was looking down and believed he still had a few more steps to go before he got to the curb [RS.136-138,144,145,150].

In reviewing photographs, Danielle Boyle testified that the strip shown at the curb was created by the work Crompco did; and before the work was done, the asphalt came all the way up to the curb [DB.48].  Danielle Boyle testified that after the work was done by Crompco, she was not aware of anyone recommending the cement strip be made consistent with the color of the asphalt [DB.52].  The work performed by Crompco in installing the concrete strip in front of the curb and sidewalk was done in October 2015, approximately 3 months prior to the incident.

Review of the Surveillance Video from January 19, 2016

Surveillance video from January 19, 2016 was taken from various cameras throughout the store.  One of the cameras was directed at the sidewalk area in front of the store. Shown in the screen grabs below is Rod Sutton walking towards the Speedway store to enter into the store and stepping up onto the sidewalk.




*View of Rod Sutton walking from the parking lot towards the entrance of the Speedway store at 6:38 PM.*

The recorded video time had Rod Sutton in the Speedway store until 6:42 PM (approximately 4 minutes) when he opened the door to exit.  The video screen grabs below show Rod Sutton exiting the store and walking across the sidewalk.



June 16, 2017                                                                                                Page 11 of 15



*View of Rod Sutton walking from the Speedway store at 6:42 PM just prior to fall.*

The video screen grab above shows the left foot of Rod Sutton partially overhanging the curb as he walks across the sidewalk.

The next frames of the video show Rod Sutton having fallen to the ground.



*View of Rod Sutton having fallen to the parking lot from the sidewalk curb at 6:42 PM.*

The camouflaged nature of the newly installed 1-foot strip of concrete against the concrete curb and sidewalk was also evident in the video.

Codes, Standards and Practices

The curb/sidewalk step condition in front of the entrance/exit doorway of the Speedway store located at 258 South Easton Road in Glenside, Cheltenham Township, Montgomery County, Pennsylvania was hazardous. It was foreseeable that the curb/sidewalk step condition could result in fall incidents without reasonable chance of recovery. The step down from the



June 16, 2017                                                                                                                                    Page 12 of 15

sidewalk to the parking lot area was made difficult to perceive with the installation of the approximately 1-foot wide concrete area along and in front of the curb. Speedway, LLC failed to reasonably and properly inspect and maintain a safe pedestrian travel path, which included the incident curb/sidewalk step condition, resulting in a curb/sidewalk step that was hazardous, causing a pedestrian fall hazard.

Township of Cheltenham, Montgomery County, Pennsylvania

The incident curb/sidewalk step was made hazardous when the approximately 1-foot wide concrete area along and in front of the curb was placed. The concrete area of the parking lot matched the color of the concrete curb/sidewalk making the step-down condition difficult to perceive. The Code of Cheltenham Township, Chapter 215: Property Maintenance was adopted June 27, 2006 by Ordinance No. 2110-06 and stated, in part, the following:

> Chapter 215: Property Maintenance
>
> The International Property Maintenance Code, 2006 Edition, as published by the International Code Council, be and is hereby adopted as the Property Maintenance Code of the Township of Cheltenham, in the Commonwealth of Pennsylvania for regulating and governing the conditions and maintenance of all property, buildings and structures; by providing the standards for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use; and the condemnation of buildings and structures unfit for human occupancy and use, and the demolition of such existing structures as herein provided; providing for the issuance of permits therefor; and each and all of the regulations, provisions, penalties, conditions and terms of said Property Maintenance Code. Said Code is adopted, and made a part hereof, as if fully set out in this chapter, with the additions, insertions, deletions and changes, if any, prescribed in § 215-2 of this chapter.

This ordinance adoption required that property owners within Cheltenham Township, Montgomery County maintain their properties in accordance with the ICC International Property Maintenance Code/2006.

ICC Property Maintenance Code/2006

The curb/sidewalk step condition violated the International Property Maintenance Code by creating a step condition which was camouflaged and difficult to perceive. The International Property Maintenance Code/2006 stated:

> **Section 201 GENERAL**
>
> **201.1 Scope.** Unless otherwise expressly stated, the following terms shall, for the purposes of this code, have the meanings shown in this chapter.
>
> **Section 202 GENERAL DEFINITIONS**
>
> **OCCUPANT.** Any individual living or sleeping in a building, or having possession of a space within a building.



June 16, 2017																													Page 13 of 15

**OPERATOR.** Any person who has charge, care or control of a structure or *premises* which is let or offered for occupancy.

**OWNER.** Any person, agent, *operator*, firm or corporation having a legal or equitable interest in the property; or recorded in the official records of the state, county or municipality as holding title to the property; or otherwise having control of the property, including the guardian of the estate of any such person, and the executer or administrator of the estate of such person if ordered to take possession of real property by a court.

**PERSON.** An individual, corporation, partnership or any other group acting as a unit.

### Section 301 GENERAL

**301.1 Scope:** The provisions of this chapter shall govern the minimum conditions and the responsibilities of persons for maintenance of structures, equipment and exterior property.

**301.2 Responsibility:** The owner of the premises shall maintain the structures and exterior property in compliance with these requirements, except as otherwise provided for in this code. A person shall not occupy as owner-occupant or permit another person to occupy premises which are not in a sanitary and safe condition and which do not comply with the requirements of this chapter. Occupants of a dwelling unit, rooming unit or housekeeping unit are responsible for keeping in a clean, sanitary, and safe condition that part of the dwelling unit, rooming unit, housekeeping unit or premises which they occupy and control.

### Section 302 EXTERIOR PROPERTY AREAS

**302.3 Sidewalk and driveways.** All sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions.

The incident curb/sidewalk step condition should have been maintained by Speedway, LLC to provide safe walking conditions without this foreseeable fall hazard. The subject curb/sidewalk step condition was not *maintained so as to provide safe walking conditions*. Speedway, LLC created the condition by Crompco's work, and for approximately 3 months, this defective and hazardous condition existed. Prior to the work performed by Crompco, the asphalt paving was against the concrete curb and the defective and hazardous condition did not exist.

Had Speedway, LLC applied black sealant over the approximately 1-foot wide concrete area along and in front of the curb, the curb/step condition would have been perceivable for Rod Sutton's direction of travel. Similarly, had the top of curb been painted "yellow," a contrast between the step condition of the curb would have been created and this incident could have been avoided.

The American Society for Testing and Materials [ASTM] is a consensus organization consisting of a cross section of users of products, producers of products, and consumers. Standards are developed through a regulated consensus process and peer review. The presence of the subject curb/sidewalk step condition endangered the public, including Rod Sutton. Excerpts from ASTM Designation F1637-95, *Standard Practice for Safe Walking Surfaces*, stated:



June 16, 2017																																																																																						Page 14 of 15

**4. Walkway Surfaces**

4.7 Exterior Walkways:

4.7.1 Exterior walkways shall be maintained so as to provide safe walking conditions.

4.7.1.2 Exterior walkway conditions that may be considered substandard and in need of repair include conditions in which the pavement is broken, depressed, raised, undermined, slippery, uneven, or cracked to the extent that pieces may be readily removed.

4.7.2 Exterior walkways shall be repaired or replaced where there is an abrupt variation in elevation between surfaces. Vertical displacements in exterior walkways shall be transitioned in accordance with 4.2….

10. Warnings

10.1 The use of visual cues such as warnings, accent lighting, handrails, contract painting, and other cues to improve the safety of walkway transitions are recognized as effective controls in some applications.  However, such cues or warnings do not necessarily negate the need for safe design construction.

The hazard of the camouflaged curb/sidewalk step condition in front of 258 South Easton Road should have been warned of by painting the curb "yellow" to avoid injuries to pedestrians, including Rod Sutton, or by applying black pavement seal coating to the 1-foot strip of concrete.

The condition of the hazardous curb/sidewalk step of 258 South Easton Road would have been present since the time of the installed concrete.  Speedway, LLC had reasonable notice of this condition, and it was feasible for Speedway, LLC to implement corrective measures, like apply a black sealant on the concrete of the parking lot or paint the curb "yellow" prior to this incident; thereby, preventing Rod Sutton from falling at this foreseeable hazard.

### **OPINIONS**

The following opinions are based upon a review of the materials, my examination and my experience, within a reasonable degree of engineering certainty:

- Speedway, LLC, through the work of Crompco, created an unsafe and hazardous condition for customers exiting the store when it created a one-foot concrete strip in front of the sidewalk abutting the store that was the same color as the curb and sidewalk.

- This condition, created by Speedway, LLC, caused an unmarked, camouflaged step condition of the curb and sidewalk area.

- Speedway, LLC, through the work of Crompco, created a hazardous condition and failed to correct it during the approximately 3-month period between the work was performed by Crompco and the incident fall by Rod Sutton.



June 16, 2017                                                                                              Page 15 of 15

- Speedway, LLC failed to properly maintain the curb/sidewalk step condition at issue.

- Rod Sutton fell in that he was not provided a safe curb/sidewalk route, free of recognized fall and recovery hazards.

- The curb/sidewalk step condition was recognized as a fall, loss of balance and recovery, causing the curb/sidewalk to be unfit and unsafe for pedestrians, like Rod Sutton.

- The incident condition failed to comply with the Code of Cheltenham Township, the <u>International Property Maintenance Code/2006</u>, and ASTM standards, practices and regulations, as discussed herein.

- Speedway, LLC should have warned of the curb/sidewalk step condition prior to this incident.

- Speedway, LLC created the condition and therefore had notice to implement corrective measures, like applying a black sealant on the concrete of the parking lot or painting the curb "yellow" prior to this incident.

<u>**COMMENTS**</u>

This report may be supplemented if additional information becomes available.


                                                             Respectfully submitted,


                                                             By:
                                                             **Keith A. Bergman, PE**
                                                             *Bergman Engineering, LLC*



# Keith A. Bergman, PE

Consulting Engineer in Civil Engineering, specializing in Highway and Street Design, Traffic Engineering, Utilities Construction, Storm Drainage, Pedestrian Safety, Walkway Surface Evaluations, Concrete and Asphalt Pavement Evaluations.  Extensive experience in Construction Management, Project Related Claims, Job Site Safety, Codes and Standards, ADA Compliance.

**Professional Engineer:**   California • Delaware • Florida • Maryland • Massachusetts • New Hampshire • New Jersey • New York • Pennsylvania • Virginia • Ohio • Illinois • Michigan

**Education:**         Bachelor of Science Degree in Civil Engineering, San Diego State University, 1991

**Professional Background:**

**2011-Present – Bergman Engineering, LLC** – Harleysville, Pennsylvania:
Civil Engineer responsible for evaluating matters involving premise liability, steps, stairways, walkways, highway and traffic engineering, including intersections; urban and rural roadways; interstate highways; parking lots; signage, pavement marking and traffic controls; codes and zoning requirements; public utilities including sanitary sewer, storm sewer and water mains.  Plan and project document review; site inspections.  Consulting in code compliance and standards; work zone safety, construction management, claims and safety.  Evaluations of ice, snow control, grading, storm water management, detention and retention basins, and soil and sedimentation control.

**2008-2012 – Fleisher Forensics** – Ambler, Pennsylvania:
Civil Engineer responsible for evaluating matters involving highway and traffic engineering, including intersections; urban and rural roadways; interstate highways; parking lots; signage, pavement marking and traffic controls; codes and zoning requirements; sidewalks and crosswalks; public utilities including sanitary sewer, storm sewer and water mains.  Plan and project document review; site inspections.  Consulting in code compliance and standards; work zone safety, construction management, claims and safety.  Evaluations of ice, snow control, grading, storm water management, detention and retention basins, and soil and sedimentation control.

**2006-2008 – Bohler Engineering, Inc. –** Chalfont, Pennsylvania:
Project Manager responsible for the preparation of Civil Engineering and Highway Design Plans for land development projects including residential, commercial, and industrial projects.  This included the preparation of the requisite construction drawings for parking lot and sidewalk design, sewer, water, storm drain and utility design, roadway and associated infrastructure design, including intersection and driveway design as well as pavement design, traffic control and traffic signal design. Responsibilities also included public hearing testimony, construction cost estimating, client, contractor and jurisdictional coordination, and concept design and analysis.  Managerial responsibilities include staff reviews, interviewing and evaluating potential new hire candidates, budget preparation, and client invoicing.

---



# Keith A. Bergman, P.E.

Page 2 of 3

**2005-2006 – Elliott Building Group** – Langhorne, Pennsylvania:
Vice-President of Land Development responsible for engineering; design; construction management, claims, and safety; and dedication of residential and commercial projects in Pennsylvania, New Jersey, Maryland and Delaware.  Responsible for coordination with municipal officials for permitting and approvals prior to and during construction.  Construction manager responsible for processing payment requests, health and safety compliance, contractor claims and change orders, scheduling, OSHA regulations and compliance, EPA regulations and implementing soils conservation district requirements for soils erosion and sedimentation control.

**1996-2005 – McMahon Associates Inc.** – Fort Washington, Pennsylvania:
General Manager in charge of Engineering and Construction in the Fort Washington Office of McMahon Associates, Inc. including traffic planning, traffic signals, highway design, land surveying, structural engineering construction management and inspection.  Responsible for a staff of over 40 employees including Project Managers, Land Surveyors, Project Engineers, Engineering Designers, and Technicians.  Managed sub-consultants' work product and contracts, including geotechnical engineers, structural engineers, landscape architects, and environmental engineers.  Resident Engineer on Highway/Street construction projects.  Agency coordination included meetings and interface with PennDOT, PA Turnpike Commission, NJDOT, DelDOT, Mass Highway, and New Hampshire DOT.  Project presentations at public meetings.

**1993-1996 – Nasland Engineering** – San Diego and Riverside, California:
Senior Design Engineer responsible for designing and processing land development plans for both private and public improvements including site plan design, ADA compliance, municipal roadway design, Caltrans Highway Access permitting, lot layout, sewer, water and storm drain design, and grading design.  Presented projects at public hearings.  Responsible for construction management, construction safety, cost estimating, negotiating and processing change orders.

**1991-1993 – Crew Engineering and Surveying –** San Diego, California
Engineer responsible for designing, specifying, and processing land development applications for private improvements including site improvements, municipal roadways, traffic control, Caltrans Highway Access permitting, lot layout, soils testing and evaluation, sewer, water and storm drain design, grading design and septic system design.



# Keith A. Bergman, P.E.

Page 3 of 3

**Affiliations:**

American Road & Transportation Builders Association, ARTBA
    ARTBA Young Executive Leadership Program 2004-2005
American Society of Civil Engineers, ASCE
American Society of Highway Engineers, ASHE
Engineers Club of Philadelphia
Institute of Transportation Engineers, ITE
    ITE Expert Witness Council
    ITE Transportation Safety Council
National Society of Professional Engineers, NSPE
Pennsylvania Society of Professional Engineers, PSPE
    Valley Forge Chapter Coordinator of MathCounts 2004-2005
Elected Board Member of Hammersmyth Farms Homeowners Association 2005 – Present
Planning Commissioner for Lower Salford Township, Montgomery County, PA 2001-2009
Souderton Area Boys Lacrosse Association, SABLA 2006-2009
Lower Salford Township, Montgomery County, PA, Board of Supervisors 2009-Present
    Lower Salford Township Police Committee 2009 – Present
    Lower Salford Township Golf Committee 2011 – Present
Indian Valley Regional Planning Commission 2014 – Present
    Delegate to the Multi-Regional Greenway Study 2015 – Present
Montgomery County Association of Township Officials, Executive Committee 2016 - Present

**Presentations:**

Transportation Engineering and Safety Conference, Traffic Accidents and Design, Penn State, 2010
Transportation Engineering and Safety Conference, Accidents and Design, Penn State, 2011

**Articles and Publications:**

Bergman Engineering Website Blog Editor 2014 - Present
ITE Expert Witness Council Newsletter Editor 2010 - 2012
    Summer & Winter 2010; Spring, Summer, Fall & Winter 2011
Distracted Driving - PSPE Reporter, Winter 2010